**Alan EIRINBERG, Plaintiff,**

v.

**CBS INC., a New York corporation, Time, Incorporated, a New York corporation, and Marshall Loeb Enterprises, Inc., a New York corporation, Defendants.**

No. 81 C 2167.

United States District Court,
N. D. Illinois, E. D.

Sept. 11, 1981.

---

Marvin N. Benn, Marvin N. Benn & Associates, Ltd., Chicago, Ill., for plaintiff.

Lawrence Gunnels, Philip C. Stahl and Michael A. Kahn, Reuben & Proctor, Chicago, Ill., for CBS, Inc.

Jerome Gilson, Jack C. Berenzweig and Gary M. Ropski, Hume, Clement, Brinks, William & Olds, Ltd., Chicago, Ill., for Time, Inc. and Marshall Loeb Enterprises.

## ORDER

BUA, District Judge.

Plaintiff, Alan Eirinberg, filed this action for service mark infringement and unfair competition seeking to enjoin the defendants,[1] CBS Inc. and Marshall Loeb Enterprises, Inc., from use of the title "Your Dollars" for a series of consumer information radio programs. This matter was heard by the court on May 15, 1981 on plaintiff's motion for preliminary injunction pursuant to Rule 65(a), Fed.R.Civ.P. Subsequent to this hearing, the parties agreed to advance the cause for a hearing on the merits and offered additional evidence by way of stipulation. The court's findings of fact and conclusions of law are stated below. For the reasons which follow, the plaintiff's request for a permanent injunction is denied.

## FINDINGS OF FACT

1. Plaintiff Alan Eirinberg graduated from the University of Illinois School of Journalism in 1954 and since that time has held marketing positions with various firms. Between 1964 and 1976, plaintiff held the position of Senior Vice President of Marketing of Exchange National Bank in Chicago (Exchange). His duties involved advertising, marketing, and public relations work for Exchange. He is currently Senior Vice President and Marketing Director of Drover's Bank and Main Bank.

2. Defendant CBS is authorized to do business in Illinois and is found and transacts business in the Northern District of Illinois.

3. In 1980, Marshall Loeb, managing editor of MONEY magazine, formed Loeb Enterprises for purposes of preparing and narrating a series of CBS radio programs titled "Your Dollars." Loeb subsequently entered into a program license agreement with CBS covering the respective rights and obliga-

---

1. Defendant Time, Incorporated was dismissed from this action by the plaintiff.

tions concerning the production, broadcast and exploitation of the programs. Time Incorporated, publisher of MONEY magazine, consented to the arrangement in order to obtain further publicity for MONEY magazine.

4. In May or June of 1974, plaintiff conceived an idea of providing a public relations service for financial institutions throughout the country. The idea contemplated a series of public interest programs relating to various ways of saving money.

5. In May or June of 1974, plaintiff contacted the attorneys for Exchange and asked them to do trademark searches to determine the availability of various names for a service mark for a radio program. After a number of searches, plaintiff arrived at the name "Your Dollar's Worth" to denote his unique campaign.

6. The service offered by Exchange and plaintiff to the various subscribing institutions provided a public service and allowed the institutions to advertise their own services in conjunction therewith.

7. By June of 1974, plaintiff had prepared a schedule for producing approximately 260 radio programs, which were then taped on cassettes and reprinted in sheet form for distribution to the general public.

8. On or about July 12, 1974, a sample mailing went out to approximately 150 financial and banking institutions throughout the country. That mailing, which included tapes, a pre-franked envelope, letters, and questionnaires was intended to test the market as to whether or not this service would be beneficial and well received. The brochures described a series of 130 radio programs for sponsorship by the advertiser which offered valuable consumer-oriented information. Each program discussed a specific topic and had a specific title identifying its subject matter. Each program recommended ways that the listener could save money and stretch his dollars in current inflationary times.

9. Each cassette and brochure contained the mark "Your Dollar's Worth" thereon in bold type and in fanciful logo form with "TM" in superscript. Each questionnaire contained the mark "Your Dollar's Worth" in bold type with "TM" in superscript. The mark as shown, in correspondence offering the services, was in bold type, capitalized letters or in quotes.

10. On or about August 20, 1974, a similar mailing was distributed to approximately 13,000 financial institutions and banks throughout the country.

11. The plaintiff first offered the following services under the mark "Your Dollar's Worth" to financial institutions and advertisers of radio programs throughout the United States as of July 12, 1974.

a. A series of recorded radio programs containing 2½ minute discussions of consumer-oriented information dealing with various topics and recommending ways for a listener to stretch his dollars in inflationary times.

b. The option of having a pretaped message prepared for each licensee under the mark.

c. A press release prepared by the plaintiff.

d. Exclusive rights, geographically, for use of the mark and the services thereunder.

e. Printed copies of the different programs each bearing the mark "Your Dollar's Worth" and the name of the licensee financial institution.

12. In addition to the August 20, 1974 mailing, plaintiff prepared special kits that were sent to other financial institutions containing reprints of newspaper articles about plaintiff's services. These articles appeared in such newspapers as The Wall Street Journal and The Chicago Daily News.

13. A third mailing went out to various institutions based upon responses to the first two mailings. Prior to December 31, 1974, plaintiff entered into twelve licensing agreements, including the American Security Bank in Honolulu, Hawaii (the whole state); The Bunker and Bell Advertising in Jacksonville, Florida; The First National Bank of Fort Walton Beach in Fort Walton Beach, Florida; Cherenson, Carol & Whol-

ser, Livingston, New Jersey (the whole state of New Jersey); Twin City Bank, North Little Rock, Arkansas; Susan State Bank, Rugby, North Dakota; Equitable Bank Corp., Baltimore, Maryland; and Ellis First National Bank of Bradenton, Bradenton, Florida.

14. The financial institutions and agencies that purchased the package of services under "Your Dollar's Worth" were sold the complete package including reprints of the various articles for distribution by the licensees to their customers.

15. The licenses were for approximately six months starting January 1, 1975 and continuing through June 30, 1975. Each of the banks purchased 126 programs.

16. Sometime in October or November of 1974, Exchange entered into an agreement with defendant CBS Inc. for the broadcasting of the series of radio programs under the mark "Your Dollar's Worth" on WBBM–AM in Chicago beginning January 4, 1975. The programs were continued for six months to one year on WBBM–AM. Plaintiff paid approximately $60,000 to defendant CBS to broadcast the programs. Exchange National Bank sponsored these programs.

17. In 1975, WBBM–AM was a 50,000 watt clear channel station that, depending upon atmospheric conditions, could reach almost all 48 contiguous United States.

18. Plaintiff and Exchange spent approximately $26,500 on costs and materials for preparing the mailer and various tapes; approximately $60,000 in the production of the tapes; and approximately $60,000 for radio time.

19. There have been no radio broadcasts of "Your Dollar's Worth" since 1975.

20. In May 1975, Exchange undertook a test mailing to 1600 radio stations in six states to research interest in the Exchange Radio Programs. No other mailing were ever sent to radio stations. No radio station ever signed an agreement to broadcast the Exchange Radio Programs.

21. Since August 1974, neither plaintiff nor Exchange has attempted to market the Exchange Radio Programs of the "Your Dollar's Worth" materials to financial institutions through a mass-mailing solicitation.

22. The May 1975 mass-mailing solicitation of radio stations is the one and only time plaintiff or Exchange attempted to market the Exchange Radio Programs to radio stations.

23. Neither plaintiff nor Exchange has ever advertised the Exchange Radio Programs or the "Your Dollar's Worth" materials in print advertising, including journals and other periodicals read by broadcast officials.

24. Plaintiff's only personal marketing effort since 1975 have consisted of occasional telephone calls and letters.

25. On February 3, 1976, in response to an inquiry from Exchange's legal counsel as to whether plaintiff wanted a service mark registration for "Your Dollar's Worth," plaintiff stated: "We are not marketing [the] series at the moment. However, if we do, I will want the service mark. Will let you know." Plaintiff never requested registration of the alleged service mark. Neither plaintiff nor Exchange ever sought registration of the alleged service mark with either the United States Patent and Trademark Office or the State of Illinois.

26. On December 10, 1979, plaintiff and the Thayer Advertising Company (Thayer) entered into an agreement for Thayer to market "Your Dollar's Worth." Thayer's marketing effort consisted of 30 salesmen making calls on financial institutions, selling "Your Dollar's Worth" along with other Thayer products.

27. No print ads or direct sales efforts were undertaken by Thayer. Nor did Thayer attempt to sell "Your Dollar's Worth" for broadcast. Instead, Thayer marketed "Your Dollar's Worth" scripts (the "Printed Materials") as hand-outs or "stuffers" for bank and savings and loan customers.

28. Thayer sold the "Your Dollar's Worth" Printed Materials to seven banks and savings and loan associations.

29. Thayer's sales effort commenced in May 1980 and concluded in August 1980.

30. Neither plaintiff nor anyone else has undertaken any sales or marketing activity with respect to the "Your Dollar's Worth" Printed Materials since August 1980.

31. The first radio broadcast of "Your Dollar's Worth" occurred on WBBM on January 11, 1975, one week after CBS first broadcast the CBS radio series "Your Dollars."

32. "Your Dollar's Worth" was broadcast on eight other radio stations in 1975.

33. The most recent broadcast of "Your Dollar's Worth" was in June 1975.

34. Plaintiff designed the "Your Dollar's Worth" radio series as a vehicle for banks and financial institutions to market their services. Its basic format included commercials by the sponsoring bank.

35. As conceived and marketed, the Exchange Radio Programs were to be sold to one Bank Licensee in each radio market. That Bank Licensee would be clearly designated as the sponsor of the "Your Dollar's Worth" programs broadcast in its market area.

36. The "Your Dollar's Worth" programs that were broadcast in 1975 by Bank Licensees of Exchange did not refer to Exchange or plaintiff as the source or creator of the program. Suggested program opens and closes always identified the Bank Licensee, not Exchange or plaintiff, as the provider of the program.

37. Exchange's sales brochure proclaimed to prospective Bank Licensees that "NOW YOUR INSTITUTION CAN ... ATTRACT NEW DEPOSITORS, STRENGTHEN CUSTOMER LOYALTY, INCREASE PROFITS ...." The sales brochure also stated that "Your Dollar's Worth" provided Bank Licensees "with a flexible long-term sales platform that can help generate greater business activity and profits. [T]he series will spotlight your commercial messages and stimulate greater audience response. Offering listeners program reprints is an effective way to build walk-in traffic and cross-sell various services."

38. The "Your Dollar's Worth" Printed Materials marketed by Thayer identified Thayer as the source of the Printed Materials; plaintiff is mentioned nowhere in those Printed Materials.

39. Exchange and plaintiff have used the phrase "Your Dollar's Worth" to describe the content of the Exchange Radio Program and the "Your Dollar's Worth" Printed Materials. For example, the suggested opening and closing scripts for the Exchange Radio Programs contained the following:

> (Your Institution's Name) has been happy to present YOUR DOLLAR'S WORTH. Every weekday (morning/afternoon) at (time) on (call letters) radio, you'll hear more ideas on how to get YOUR DOLLAR'S WORTH.

Similarly, a guide sheet for Thayer's merchandising of the Printed Materials contained the following suggestion:

> Another approach to such a seminar: "Doing It Yourself—To Get *Your Dollar's Worth.*"

Also, the brochure for the Exchange Radio Programs contained the following text:

> Question: Will these programs really give valuable information to my customers and prospects?
>
> Answer: Yes. Singles, young or established families, and older people are all deeply concerned about getting *their dollar's worth*, especially today.

Plaintiff admitted that "Your Dollar's Worth" was meant to describe a series of programs instructing the listener how to get more value for his money.

40. A series entitled "Your Dollars" was first broadcast over the CBS radio network beginning on January 4, 1975, one week before the first broadcast of the Exchange Radio Programs. The first broadcast over WBBM, a CBS owned and operated radio station in Chicago, occurred at 2:40 PM on January 4, 1975. The series was then anchored by Ray Brady, editor of Dun's Review, the national business magazine published by Dun & Bradstreet, Inc. On October 20, 1975, Ray Brady began broadcasting a series entitled "Today In Business" and ceased broadcasting "Your Dollars."

41. Beginning on August 6, 1979, WCBS/Newsradio 88 (a CBS owned and operated radio station in New York) began broadcasting a series entitled "Your Dollars" with William S. Rukeyser as the anchorman. "Your Dollars" has been broadcast on WCBS/Newsradio 88 since that time, although Marshall Loeb became anchorman on March 31, 1980.

42. Beginning on January 5, 1981, "Your Dollars With Marshall Loeb" has been broadcast over the CBS radio network and on CBS owned and operated stations, including WBBM in Chicago. In addition to WCBS in New York and WBBM in Chicago, "Your Dollars" or "Your Dollars With Marshall Loeb" has been carried by more than 240 CBS radio network affiliated stations in each of the first three months of 1981.

43. On March 6 and 7, 1976, the CBS radio network broadcast a special feature titled "Your Tax Dollars," a thirty part weekend special which was anchored by Ray Brady.

44. CBS used "CBS," "CBS Radio Network," "WCBS/Newsradio 88," and "WBBM/Newsradio 78" to identify the source of its radio series. At no time has CBS used, or attempted to use, the titles "Your Dollars," "Your Tax Dollars," or "Your Dollars With Marshall Loeb," or any of them, to designate or identify the source of its radio series.

45. All promotional and advertising materials for "YOUR DOLLARS" identify the "CBS Radio Network" as the source of the radio programs. The promotional and advertising materials refer to the program as "Your Dollars With Marshall Loeb" and identify Mr. Loeb as Managing Editor of MONEY Magazine.

46. "Your Dollars" is promoted by radio spot announcements of the following type:

I'm Marshall Loeb, Managing Editor of MONEY Magazine, and today on "Your Dollars" I'll tell you about investing in second mortgages. Hear it here.

The names Marshall Loeb and MONEY Magazine appear prominently in each spot announcement publicizing the program and in the programs themselves.

47. Time Incorporated publishes a monthly magazine titled MONEY, which includes articles and other information about personal finances, investments, careers, inflation, and a variety of other topics related to financial matters. MONEY Magazine is widely advertised in other publications of Time, by direct mail, and in other ways. MONEY Magazine is publicized, as is its Managing Editor, Marshall Loeb, in the CBS radio series "Your Dollars With Marshall Loeb" or "Your Dollars." The present circulation of MONEY Magazine is in excess of 850,000.

48. Marshall Loeb, anchorman of "Your Dollars," became Managing Editor of MONEY Magazine in March, 1980 after serving 24 years with Time Magazine. At Time he held a series of key editorial positions, wrote or edited more than 125 Time cover stories, and was named Time's first Economics Editor in 1979.

49. Plaintiff intends to continue promoting services under the mark "Your Dollar's Worth," but has withheld promoting these services until this matter is resolved because any effort made on his part now will result in further confusion between his mark and defendant's mark.

50. The phrase "Your Dollars" is commonly used to refer to personal finances or assets. The phrase has been used in this way in the titles of lead articles published in MONEY magazine: "The Candidates and Your Dollars" (October, 1980) and "Reagan and Your Dollars" (December, 1980). In fact, the phrase is in common use in the magazine.

51. The CBS Radio Network announcement for "Your Dollars" stated: "The focus of "Your Dollars" will be on how money is made, how to keep it, conserve it and stretch it further, as well as on general business news and market trends." A similar announcement for "Your Tax Dollars" stated that the program was designed to "help Americans easily understand how to handle their tax dollars."

52. CBS markets its news programs, sports reports, public affairs programs and

other feature series as a collective package (the "News and Public Affairs Package") to advertisers. "Your Dollars" is one of many series included in the News and Public Affairs Package. Advertisers purchase advertising time for the News and Public Affairs Package and not specifically for the "Your Dollars" series. CBS does not attempt to sell advertising time specifically for "Your Dollars." Nor does CBS use "Your Dollars" separately to sell advertising time. Advertisements which are not specifically time requested with a particular show are broadcast in random order during the News and Public Affairs Package broadcasts. There is no evidence that a local advertiser has ever purchased advertising time for directly before or directly after the "Your Dollars" program.

53. CBS markets its News and Public Affairs Package (which includes "Your Dollars") to radio advertisers for national broadcast. Plaintiff and Exchange primarily marketed their "Your Dollar's Worth" materials to local banks and savings and loans for local broadcast and/or local distribution. There is no evidence that defendants have been in competition with plaintiff in the marketing of their programs.

54. Since January 5, 1981 (when CBS began its current broadcast of "Your Dollars"), no advertisement for a bank or savings and loan association has ever appeared during a broadcast of "Your Dollars." There is no evidence that an advertisement for a bank or savings and loan association has ever appeared during a broadcast of any CBS "Your Dollars" show from 1975 to the present. By contrast, Exchange and plaintiff marketed their "Your Dollar's Worth" materials primarily to banks and savings and loan associations; moreover, the only sales of the "Your Dollar's Worth" materials were to banks.

55. From January through June 1975, both "Your Dollars" and "Your Dollar's Worth" were broadcast on WBBM. Plaintiff has produced no evidence of confusion as to the source of either radio broadcast during that period.

56. There have been no sales of "Your Dollar's Worth" for broadcast since 1974. There have been no broadcasts of "Your Dollar's Worth" since June 1975. There were seven sales of "Your Dollar's Worth" Printed Materials in 1980.

57. Samuel Sax, presently Chairman of the Board of United of America Bank and Chief Executive Officer of Exchange National Bank from 1974 through 1977 and a close friend of Mr. Eirinberg, testified that he heard an advertisement for defendants' program "Your Dollars" on the radio one week prior to the Preliminary Injunction Hearing. He testified that when he heard the advertisement on the radio he "thought and hoped" that the plaintiff, Alan Eirinberg, "had sold the program." The court does not find this testimony to be credible evidence of confusion.

58. CBS is not aware of any instances of actual confusion between "Your Dollar's Worth" and any of the following CBS radio programs: "Your Dollars" (anchored by Ray Brady), "Your Tax Dollars" (anchored by Ray Brady), "Your Dollars" (anchored by Marshall Loeb), or "Your Dollars With Marshall Loeb."

59. Defendant CBS offers its News and Public Affairs Package and plaintiff Eirinberg offers his "Your Dollar's Worth" services to companies which purchase radio advertising time.

60. Plaintiff also offers his services under "Your Dollar's Worth" to companies which purchase newspaper advertising space or for distribution to customers of the companies.

61. Defendant CBS markets its News and Public Affairs Package (which includes "Your Dollars") to radio advertisers for national broadcast. Plaintiff markets his "Your Dollar's Worth" services to radio advertisers for local broadcast and local distribution.

62. Between March 7, 1976 and August 6, 1979, CBS did not broadcast or use the term "Your Dollars." Beginning August 6, 1979, WBBM/Newsradio 78, in Chicago, and WCBS/Newsradio 88, in New York, began

broadcasting a feature entitled "Your Dollars" (anchored by William S. Rukeyser). "Your Dollars" has been broadcast on WBBM and WCBS since that time, although the anchorman was changed to Marshall Loeb on March 31, 1980.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter of this action under 28 U.S.C. § 1331(a).

2. The plaintiff's radio program title "Your Dollar's Worth" is merely descriptive of the content and subject matter of the radio programs and printed materials, the theme of which is advising consumers how to obtain greater value for their financial expenditures. *MBH Enterprises, Inc. v. Woky, Inc.*, 633 F.2d 50 (7th Cir. 1980); *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213 (7th Cir. 1979); *Homemakers H & H.C.S., Inc., v. Chicago Home for Friend*, 484 F.2d 625 (7th Cir. 1973); *F S Services Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671 (7th Cir. 1972).

3. The plaintiff has failed to establish that the phrase "Your Dollar's Worth" has acquired any secondary meaning linking the product to its source. *Telemed Corp. v. Tel-Med, Inc.*, 197 U.S.P.Q. 894, 897 (N.D.Ill. 1978), aff'd 588 F.2d 213 (7th Cir. 1979); *Union Carbide Corporation v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976).

4. The phrase "Your Dollar's Worth" as used by the plaintiff is not distinctive and does not function as a trademark or service mark to identify the plaintiff as the source of the radio programs.

5. The plaintiff has failed to establish that defendants use of the phrase "Your Dollars" constitutes a false designation of origin or false description or representation within section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Joshua Meir Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144 (2d Cir. 1956).

6. The defendants' use of the phrase "Your Dollars" did not function as service marks in that the defendants' use was descriptive of the services offered and there is no evidence that the defendants intended to confuse its services with those of the plaintiff. Under these circumstances, the defendants are entitled to the fair use defense provided in the Act. 15 U.S.C. § 1115(b)(4). *MBH Enterprises, Inc. v. Woky, Inc.*, 633 F.2d 50 (7th Cir. 1980).

7. The plaintiff has not sustained its burden of proving that the defendants have violated 15 U.S.C. § 1125(a); the Illinois common law of unfair competition; Chapter 140, Ill.Rev.Stat. § 22; Chapter 121½, Ill.Rev.Stat. §§ 311–317; Chapter 121½, Ill. Rev.Stat. §§ 261–272; Chapter 140, Ill.Rev. Stat. §§ 24–25; or any other laws.

8. Inasmuch as plaintiff's alleged service mark "Your Dollar's Worth" is not distinctive, there is no basis for a claim of dilution of its distinctive quality under Chapter 140, Ill.Rev.Stat. § 22.

9. Plaintiff has not proved that defendants' acts have created a likelihood of injury to his business reputation. Accordingly, there is no violation of that portion of Chapter 140, Ill.Rev.Stat. § 22.

10. The absence of any credible instances of actual confusion in the last six years creates a strong presumption against any such confusion in the future.

11. Defendants have not infringed or otherwise violated the rights of plaintiff, or unfairly competed with plaintiff, through the use of the phrase "Your Dollars" for a radio program.

12. Plaintiff has failed to prove by a preponderance of competent and credible evidence that defendants have acted in bad faith or have been guilty of any conduct which would justify injunctive relief under general equitable principles.

IT IS SO ORDERED.